UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAMILTON SPECIALTY
INSURANCE COMPANY,

Case Number: 2:18-CV-11346-AJT-RSW
HON. ARTHUR J. TARNOW
MAG. JUDGE R. STEVEN WHALEN

Plaintiff,

v

TRANSITION INVESTMENTS, LLC,
KELVIN MARTIN, Personal Representative
of the Estate of Michelle R. Ford, PRECIOUS
FORD, Personal Representative of the Estate
of Jaysean Ford, PRECIOUS FORD, Personal
Representative of the Estate of Jayceon Ford,
and PRECIOUS FORD, Next Friend of Semaj
Ford, a minor,

Defendants.

_____

MARK L. DOLIN (P45081)          EDMUND O. BATTERSBY (P35660)
ERIN R. KATZ (P71604)           THE SAM BERNSTEIN LAW FIRM
KOPKA PINKUS DOLIN PC           Attorney for Defendants
Attorneys for Plaintiff         31731 Northwestern Highway, Ste. 333
32605 West 12 Mile Rd., Ste. 300   Farmington Hills, MI  48334
Farmington Hills, Michigan 48334   248-737-8400/ fax: 248-737-4392
(248) 324-2620                  ebattersby@sambernstein.com
(248) 324-2610 fax              jharding@sambernstein.com
mldolin@kopkalaw.com
erkatz@kopkalaw.com

_____

THE
SAM BERNSTEIN
LAW FIRM

31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES............................................................... ii

QUESTION PRESENTED.................................................................. 1

I.   INTRODUCTION ………………………............................................ 2

II.  FACTS ……………………….......................................................... 3

III. STANDARD OF REVIEW....................................................................5

III. LAW &ARGUMENT ................................................................. 6

IV. CONCLUSION ...............................................................................13

THE
SAM BERNSTEIN
LAW FIRM

31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

<u>TABLE OF AUTHORITIES</u>

28 U.S.C. §2201……………………………………………………….……5

Fed. R. Civ. P. 57 ……………………………………………….………..….5

MCL 500.2006 …………………………………….…….…………… 5, 9

MCL 600.2006 …………………………………….…….…...…….………13

*Allstate Ins. Co. v Green,* 825 F.2d 1061 (6th Cir. 1987)..….……………….……..5

*A. L. Mechling Barge Lines, Inc. v United States,* 368 U.S. 324 (1961)….……6

*Rory v Cont'l Ins. Co.,* 473 Mich. 457, 468-469; 703 N.W.2d 23 (2005)…........6

*Wilkie v Auto-Owners Ins. Co.*, 469 Mich. 41, 63; 664 N.W.2d 776 (2003)…...6

*Singer v American States Ins.,*
245 Mich. App. 370, 381; 631 N.W.2d 34 n 8 (2001)…………………………6

*Skinner v Square D Co.*, 445 Mich 153; 516 NW2d 475 (1994) …………….9

*Elliott v Casualty Ass'n of America,*
254 Mich. 282, 287; 236 N.W. 782 (1931)………………………...10, 11, 12, 13

*Zurich Ins. Co. v Rombough,* 384 Mich. 228, 235; 180 N.W.2d 775 (1970)….11

*Detroit Edison v Mich. Mut. Ins. Co.,* 102 Mich. App. 136 at 145-146…...12, 13

THE
<u>SAM BERNSTEIN</u>
LAW FIRM

31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

ii

## QUESTION PRESENTED

Should this Honorable Court enter an order granting summary judgment in favor of Defendants and requiring Plaintiff HAMILTON SPECIALTY INSURANCE COMPANY to indemnify Defendant TRANSITION INVESTMENTES, LLC regarding its fair and reasonable settlement with KELVIN MARTIN, Personal Representative of the Estate of MICHELLE R. FORD, PRECIOUS FORD, Personal Representative of the Estates of JAYSEAN FORD and JAYCEON FORD and Next Friend of SEMAJ FORD, a minor in the underlying action?

Defendants Answer:      Yes.

Plaintiff Answers:      No.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

I.     <u>INTRODUCTION</u>

This is an action for declaratory judgment concerning issues of liability coverage for Defendant TRANSITION INVESTMENTS, LLC (hereinafter referred to as TRANSITION) for its negligence in causing deaths and serious personal injury and the obligation of Plaintiff HAMILTON SPECIALTY INSURANCE COMPANY (hereinafter referred to as HAMILTON) to provide said coverage.

Plaintiff HAMILTON wrongfully claimed that the following exclusions contained in its insurance policy are applicable in this matter:

- This insurance does not apply to:
  b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
       (1) Assumed in a contract or agreement that is in an "insured contract…"

- This insurance does not apply to damages or expenses due to "bodily injury," "property damage"… ***arising out of or resulting from the alleged or actual violation(s)*** of the following, as they pertain to "habitability", including amendments thereto:
       (a)    Civil Codes;
       (b)    Health and Safety Codes;
       (c)    Any Housing and Urban Development laws, ordinances or statutes….
       (e)    Federal, State or local section 8 (government subsidized) or programs;
       (f)    Any administrative rules or regulations pertaining to any of the foregoing, including but not limited to those promulgated by local municipalities…

THE
SAM BERNSTEIN
LAW FIRM

31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

"This insurance does not apply to liability or suits *arising from Tenants or the acts of Tenants.*" (emphasis supplied).

Due to these allegedly applicable exclusions, Plaintiff HAMILTON wholly, unjustly and completely denied coverage to defend Defendant TRANSITION and to indemnify it for negligently causing the wrongful death and injury for claims made by KELVIN MARTIN, Personal Representative of the Estate of MICHELLE R. FORD, PRECIOUS FORD, Personal Representative of the Estates of JAYSEAN FORD and JAYCEON FORD and Next Friend of SEMAJ FORD, a minor. Plaintiff HAMILTON intentionally failed to investigate, defend or negotiate a potential settlement and indemnify Defendant TRANSITION in the underlying tort action.

Plaintiff HAMILTON's position was recklessly taken regarding the applicability of the liability insurance policy in this matter and is not based upon its contract, proper interpretation of said contract, proper interpretation of the law, or anything else other than its own bad faith intransigence to meet its duty to defend Defendant TRANSITION and pay the legitimate claims made in this case.

## II.   FACTS

This case arises out of claims for negligently caused three wrongful deaths and a serious personal injury resulting from a fire that occurred in a home owned by Defendant TRANSITION and insured with Plaintiff HAMILTON. Charles Sturkey leased the property located property at 18192 Lahser Road in the City of

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

3

Detroit from Defendant TRANSITION and naturally and regularly welcomed his fiancé MICHELLE FORD into his home.  He also frequently welcomed Michelle's family, including her grandsons, JAYCEON FORD (3 years old), JAYSEAN FORD (3 years old) AND SEMAJ FORD (4 years old) into his home for social occasions, parties, sleepovers and the like.  On June 27, 2017, the FORDS were at the property as guests of Mr. Sturkey when the premises was engulfed in flames causing MICHELLE R. FORD, JAYCEON FORD and JAYSEAN FORD to lose their lives and causing SEMAJ FORD to suffer grave and serious injuries.

Claims were filed with Plaintiff HAMILTON as the insurer of the property but the claims were denied out of hand without so much as a cursory investigation or just cause (Exhibit 1, Denial Letter).  Despite having numerous opportunities to investigate, litigate liability and discover Defendants' damages, Plaintiff HAMILTON repeatedly ignored Defendants' claims without any good faith basis to do so.  Defendant TRANSITION was ultimately forced to fend for itself in the underlying action.

This *declaration action was brought after a settlement* was reached on February 12, 2018 in the underlying negligence action against Defendant TRANSITION in the amount of the $3,000,000.00 to be paid to KELVIN MARTIN, Personal Representative of the Estate of MICHELLE R. FORD, PRECIOUS FORD, Personal Representative of the Estates of JAYSEAN FORD

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

and JAYCEON FORD and Next Friend of SEMAJ FORD, a minor (Exhibit 2, Consent Judgment).    Additionally, because of Plaintiff HAMILTON'S multiple violation of the Unfair Trade Practices Act found at MCL 500.2006 et seq., penalty interest in the amount of 12% per annum is applicable to the consent judgment in this matter which amounts must be calculated from February 12, 2018 through January 31, 2018 with additional per diem interest to be applied subsequent to said date.  See MCL 500.2006(4).

Now, Plaintiff HAMILTON attempts to persuade this honorable court to conduct an evidentiary hearing on this issue of coverage and of damages to test the validity of Plaintiffs' consent judgment, which was a reasonable settlement for three deaths and serious personal injuries and was legally presumed to be entered into in good faith between Defendants.

## III.   STANDARD FOR REVIEW

Defendants rely upon Fed. R. Civ. P. 57 regarding "Declaratory Judgments" which empowers this Honorable Court to grant a declaratory judgment under 28 U.S.C. §2201 even if there is the existence of another adequate remedy.  There is no question that when the dispute arises between an insurer and an insured that this Honorable Court may enter a judgment declaring the rights and other legal relations of ***an interested party*** involving an insurance policy.  See *Allstate Ins. Co. v. Green,* 825 F.2d 1061 (6th Cir. 1987) (emphasis added).  Moreover, determining whether

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

or not it is appropriate to grant a declaratory judgment is within the sound discretion of the district court.  See *A. L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324 (1961).  It has been repeatedly held that it is within the trial court's sound discretion to decide whether or not to grant a declaratory judgment.

## IV.   LAW AND ARGUMENT

### a.   Defendants' Claim is not Precluded under the Tenancy Exclusion

It has long been held in Michigan that the plain language of insurance contracts is not open to judicial construction and must be enforced as written. "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract.  This Court has previously noted that 'the general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.'" Moreover, the intent of the contracting parties is best discerned by the language actually used in the contract.  See *Rory v Cont'l Ins. Co.,* 473 Mich. 457, 468-469; 703 N.W.2d 23 (2005).  See *Wilkie v Auto-Owners Ins. Co.*, 469 Mich. 41, 63; 664 N.W.2d 776 (2003).  Also, *Singer v American States Ins.,* 245 Mich. App. 370, 381; 631 N.W.2d 34 n 8 (2001).  As such, it is this Honorable Court's duty to first look to the plain language of Plaintiff's insurance policy to determine coverage, valid exclusions and what amount of policy limits are applicable to the claims made in

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

the instance case.

The court must first consider the plain language of the policy (Exhibit 3). The policy states in pertinent part ***"This insurance does not apply to liability or suits arising from Tenants or the acts of Tenants."*** Parenthetically, the policy fails and neglects to define ***"Tenants"*** or ***"Acts of Tenants."*** Regardless, ***this suit arises from a claim made by non-tenants based on the negligent acts of the property owner.*** The fire was caused by a defective and faulty stove, which the tenant Charles Sturkey (hereinafter referred to as Sturkey) had complained and informed his landlord about multiple times prior to the fire.

Sturkey's statement to the Detroit Police while hearsay made it clear that he placed the responsibility of the fire squarely on Defendant landlord. If Plaintiff HAMILTON would have exercised its duty to defend and litigated the claims it could have investigated and engaged in vigorous discovery on the point of the negligence of Defendant TRANSITION in causing the fire. In pertinent part, Sturkey's statement clearly indicated that "I've talked to the landlord about the stove over and over again. We've had a couple of fires from that stove. We had fires in the oven. I told the landlord and she said just clean it. So we would clean it and clean it. We would have fires with the stove and nobody would even touch it. We've been having problems with the oven since we've moved there. I've asked her to replace the stove." (Exhibit 4). As such, there was information from the

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

investigation by the authorities from the beginning that the fire was a direct consequence of ***the landlord's negligence and failure to fix the defect and was not fault of the tenant***.  Therefore, without question this exclusion does not apply.

b. Injuries and Deaths of Defendants Were Not Arising Out of Any Violation of the Rental Agreement and Were Not a Proximate Cause of the Injuries and Deaths and Therefore Do Not Preclude Coverage

Tenant Charles Sturkey entered into a rental agreement with Defendant TRANSITION which stated that the property would be used as a residence for no more than one adult and two children.  Defendants contend that they were not in violation of the rental agreement because they were social guests and not residents. However, even if there were tenancy violations, the policy in plain language only provides an exclusion of coverage setting forth that ***"This insurance does not apply to damages or expenses due to "bodily injury," arising out of or resulting from the alleged or actual violation(s)...."*** *Rory,* supra at 468.  The policy language ***"... is to be enforced as written...."*** *Id* at 470.  The policy language quoted has a specific causation standard of ***"arising out of or resulting from the alleged or actual violation(s)"*** and not a legal or proximate cause of the injury and therefore the claims are clearly not precluded under that exclusion.

The tragic wrongful deaths of MICHELLE R. FORD, JAYCEON FORD and JAYSEAN FORD along with the serious and permanent injuries suffered by SEMAJ FORD were caused by a fire that originated from faulty wiring in the stove

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

and was not the fault of any person in the residence. These deaths and injuries were caused by the negligent acts of Defendant TRANSITION under any standard of causation employed in the analysis of what and why the fire happened. In any event, the mere fact that additional guests were in the residence at the time of the fire was unrelated to the cause of the fire and most certainly also not a proximate cause of the deaths and injuries. Regardless, Plaintiff HAMILTON'S claimed exclusion simply defines the relationship of any tenancy violations for exclusion of coverage as ***"arising out of or resulting from <u>the alleged or actual violation</u>(s)"*** ***and not as*** a proximate cause which must only be ***<u>a</u>*** 'cause in fact' as well as ***<u>a</u>*** 'legal' cause. See *Skinner v Square D Co.,* 445 Mich 153; 516 NW2d 475 (1994).

   c.   <u>Plaintiff HAMILTON'S Unjustified Refusal to Defend their Insured Makes it Bound to Pay the Amount of any Reasonable Good Faith Settlement Made by the Insured</u>

   Plaintiff HAMILTON's claim that the property in question was not up to Housing and Urban Development standards was denied by the insured. Despite this objection, Plaintiff HAMILTON failed in its duties to investigate, preserve evidence and allow a fair and vigorous discovery of all claims in litigation to test the basis of and see if its claimed exclusion was valid. See Exhibit 3.

   Due to Plaintiff HAMILTON's failure to comply with their contractually mandated duty to defend forced their insured Defendant TRANSITION to fend for itself. Defendant TRANSITION had duty to mitigate damages, which it lived up

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

to by agreeing to the consent judgment, which sensibly and logically limited the amount of a judgment, interest, costs and attorney fees.

It has long been held by Michigan courts that when an insurance company wrongfully refuses to settle or defend an action that it takes the risk that the defendant will fend for itself and may find that the most reasonable thing to do is to settle the case.  The Michigan Supreme Court quoted with approval over eighty-five (85) years ago in 1931 that "Where the insurer has agreed to settle or defend an action brought to recover of the insured for an accident covered by the policy, and has wrongfully refused to so settle or defend the action, and the insured defends the same and in good faith makes a settlement thereof, he may recover the amount paid on such settlement, unless it is shown that there was in fact no liability, or the amount paid was excessive. ***The settlement is presumptive evidence that there was a liability, and as to the amount thereof.***"  See *Elliott v Casualty Ass'n of America*, 254 Mich. 282, 287; 236 N.W. 782 (1931) (emphasis added).

In *Elliott*, it was noted that "In this action, questions as to the reasonableness of the settlement, the good faith of the insured and his liability in the suits brought against him for damages were open to the defendant.  They were not challenged in evidence." *Id. at* 288.  There the court noted, "Such settlement, in the absence of proof to the contrary, is presumptive evidence of liability and the amount thereof." *Id. at* 288.   There the court also noted, ***"It is now well established by precedent***

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

***that an insurer, having thus violated its contract to defend a suit against an insured, <u>may not be allowed to defeat a recovery of the policy by objecting</u> to the manner in which the judgment was paid.***" *Id.* at 288 (emphasis added). Likewise, in the instant case, Plaintiff HAMILTON had many opportunities and chances to investigate this claim as required by MCL 500.2006 seq. and assess the liability and damages. Instead, it chose, at its own peril, to flippantly raise baseless policy defenses in letters without taking any action to have a *judicial determination* of whether or not its position was correct. Plaintiff HAMILTON'S action in this regard exposed its insured, Defendant TRANSITION, to great financial losses when it could have taken reasonable steps otherwise. Plaintiff HAMILTON most certainly should have defended under a reservation of rights and then filed an action for declaratory judgment to have a *judicial determination* made of whether or not it had a duty to defend or indemnify its insured. As noted in the *Elliott* case, because of this violation of its contract, it may not be allowed to defeat a recovery on the policy by now objecting to the manner in which its insured protected itself.

There are multiple cases reported in Michigan that support and affirm the holding of the Supreme Court in *Elliott supra.* The *Elliott* decision has been interpreted as instructing that the best way for the insurance company to protect itself is to defend the action against the insured while giving notice that it is not waiving its right to deny its own liability on the policy. See also *Zurich Ins. Co. v*

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

11

*Rombough,* 384 Mich. 228, 235; 180 N.W.2d 775 (1970).  In *Zurich,* the Michigan Supreme Court noted that delaying a third party action is frowned upon and that defendant insurance company should defend even if it disagrees on an issue of coverage which should be ***"determined in a separate declaratory action."***  See *Detroit Edison v Mich. Mut. Ins. Co.,* 102 Mich. App. 136 at 145-146 (1980) (emphasis added).  In the instant case, Plaintiff HAMILTON filed this declaratory action only *after* it had unreasonably refused to defend its insured and the insured had been forced to litigate the underlying matter and fend for itself at its own cost.

It has been clear since at least the 1930's that the insurer has a number of options available to it other than just ignoring the claim.  In *Detroit Edison, supra* the Michigan Court of Appeals noted that the instruction from the *Elliott* Court on what the appropriate course of action that must be followed by an insurer in a situation such as that at bar is required.  In pertinent part, it was recognized that: "The *Elliott* Court indicated that ***two options are available to an insurer*** when it is asked to defend an action brought against the insured.  It can ***undertake the defense with notice to the insured that it is reserving the right*** to challenge its liability on the policy.  The second alternative for the insurer is to ***repudiate liability, refuse to defend and take its chances*** that there will be a showing that there is no coverage for the insured's liability.  In *Elliott,* the insurer refused to defend.  When the insured brought suit to recover the amount of the settlement, the insurer presented

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

no evidence to show there was no liability or that the settlement was unreasonable or not made in good faith.  The *Elliott* Court, therefore, ordered the insurer to pay the amount of the settlement." *Id.,* supra at 145 (emphasis added).  What was noted by the Michigan Court of Appeals in *Detroit Edison,* supra, were facts that were strikingly similar to those in the instant case.  The holding in *Elliott* has been settled law in Michigan since at least 1931 and once again explained in detail by the Michigan Court of Appeals almost thirty years ago in 1980.  There is absolutely no reason that Plaintiff HAMILTON should not have followed the dictates of the *Elliott* Court.

Likewise, this Honorable Court should not allow Plaintiff HAMILTON to now, ***after a fair and reasonable settlement has been reached in the underlying action***, object to that which it ignored and present evidence and arguments to challenge the settlement as being unreasonable and/or not made in good faith.  The lack of good faith in this matter rests solely with Plaintiff HAMILTON.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an order granting Defendants' Motion for Summary Judgment and order Plaintiff HAMILTON to indemnify its insured in the underlying action and comply with and satisfy the Consent Judgment which was fairly reached along with penalty interest pursuant to MCL 600.2006.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

13

Counsel for Defendants looks forward to meeting with the court and counsel for Plaintiff to answer any questions at the time of the hearing.

Respectfully submitted,

*/s/ Edmund O. Battersby*
EDMUND O. BATTERSBY (P 35660)
THE SAM BERNSTEIN LAW FIRM
Attorney for Defendants
31731 Northwestern Highway, Suite 333
Farmington Hills, MI  48334
248-737-2030 x 1113 / Fax: 248-737-4392
Secretary:  800-588-7134
ebattersby@sambernstein.com

Dated: January 31, 2019

### PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the attorneys of record of all parties to the above cause by mailing same to them at their respective addresses (and/or facsimile numbers) as disclosed by the pleadings of record herein, on January 31, 2019.  I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

☐ U. S. Mail            ☐ Facsimile
☐ Hand Delivered         ☐ UPS
☐ Airborne Next Day Delivery   X  Other – efile/Serve

Signature _____*/s/ Julie Harding*_____
                Julie Harding

THE
SAM BERNSTEIN
L A W   F I R M
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

INDEX OF EXHIBITS

1. Denial Letter from attorney Jeanette L. Dixon of Manning & Kass, Ellrod, Ramirez, Trester LLC dated September 11, 2017;

2. Entered Consent Judgment dated February 14, 2018;

3. Policy of Insurance, and;

4. Written Statement from Charles Sturkey taken on June 27, 2017.

THE
SAM BERNSTEIN
LAW FIRM

31731 NORTHWESTERN HIGHWAY

SUITE 333

FARMINGTON HILLS,

MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

# EXHIBIT 1

STEVEN D. MANNING
DENNIS B. KASS
ANTHONY J. ELLROD
EUGENE P. RAMIREZ
FREDRIC W. TRESTER
LAWRENCE D. ESTEN
MILDRED K. O'LINN *
ALFRED M. DE LA CRUZ
ERWIN A. NEPOMUCENO
BRIAN T. MOSS *
JEFFREY M. LENKOV
MARGUERITE L. JONAK *
JOHN D. MARINO
MICHAEL L. SMITH
LOUIS W. PAPPAS
SHARI L. ROSENTHAL
EUGENE J. EGAN
CLIFFORD A. CLANCEY
RINAT B. KLIER-ERLICH
ROBERT B. ZELMS †
R. ADAM ELLISON
SCOTT WM. DAVENPORT
JASON J. MOLNAR *
DAVID V. ROTH
KATHLEEN A. HUNT *
STEVEN J. RENICK
JAMES J. PERKINS *
JAMES E. GIBBONS
DANIEL B. HERBERT *
DARIN L. WESSEL *
MARK A. HAGOPIAN
DAVID GORNEY
SUZIE ZACHAR IRWIN †
DONALD R. DAY *
ALAN C. JABLIN *
D. HIEP TRUONG
MICHAEL A. WEISMANTEL
JANET D. JOHN *
KEVIN H. LOUTH
SHARON S. JEFFREY
CANDACE E. KALLBERG
DAVID R. REEDER *

TOBY D. BUCHANAN
LADELL H. MUHLESTEIN
SEVAN GOBEL
RICHARD G. GARCIA
JOHN M. HOCHHAUSLER
ANTHONY S. VITAGLIANO †
JOHN M. COWDEN*
JENNIFER SUPMAN
KEITH RICKER †
DEBORA VERDIER †
JEANETTE DIXON
RICHARD MACK †
CHRISTOPHER DATOMI
KENNETH S. KAWABATA
STEVEN AMUNDSON*
PAUL HANNA
TONY M. SAIN
MARILYN R. VICTOR*
MARTIN HOLLY
MINAS SAMUELIAN
LALO GARCIA
MATTHEW P. NOEL
GENE W. LEE
BARBARA SEYMOUR
ANDY J. SEMOTIUK *
JULIE M. FLEMING
ROBERT E. MURPHY *
NINA RICCI FRANCISCO
DONALD R. BECK
LORI B. WADE
FRANK M. LAFLEUR
ROBERT P. WARGO*
SCOTT A. ALLES †
MAHASTI KASHEFI
JONATHAN J. LABRUM *
LISA WONG
CHRISTOPHER WARREN
DONALD APPLEGATE
JONATHON D. SAYRE
HEATHER M. ANTONIE
KAREN LIAO
JASON J. DOSHI

ZUBIN FARINPOUR
LAURA MCADAMS
GRETHCHEN COLLIN
RODRIGO J. BOZOGHLIAN
MIRIAM RENZI
ANGELA M. POWELL
D. ROCKEY GOODELL III *
JENIFER WALLIS‡
MATTHEW E. KEARL
JENNIFER KANTER
JUSTIN SHERGILL
NARINE AVANES
ERIK BABAKHANIAN
ADAM ROEHRICK
TONYA N. MALEK
MELISSA PALOZOLA
EMILY EDWARDS
JESI WOLNIK
CARL CHEA
LINNETTE FLANIGAN
FATIMA BADREDDINE
DANIEL SULLIVAN
EVAN SCHUBE
HILA GOLCHET
MARYAM MALEKI
ALEXANDRA SEIBERT
MICHAEL COOPER
BRIGITTE KHOURY
KAYLEIGH MCGUINNESS
PAUL MITTELSTADT
NICOLE THRELKEL
A. FOSTER SHI
MAE ALBERTO
JESSICA MAWRENCE
CATHERINE BARNARD
MICHAEL KVYAT
BRIAN SMITH
GREGORY LEWIS
JUDSON H. PRICE
JOHN STANLEY
IRINA LERNER
JORDON FERGUSON *

PAUL HARSHAW
BRIANA CURRAN
VICTORIA ORAFA
ANDREA KORNBLAU
HA NGUYEN
ASA BAGHDASSARIAN
ANTHONY WERBIN
DAVID OBRAND
MICHAEL WATTS
TRISHA NEWMAN
CHRISTOFFER GADDINI
NISHAN WILDE
BRIAN ANGELINI
LYNN CARPENTER
JEFFREY FISHKIN
LYNELL D.DAVIS
DAVID R.RUIZ
NATALYA VASYUK
JESSICA ROSEN
VICTOR M. CAMPOS*
ANDREEA CUSTUREA
NATHAN GROSCH
LINNA LOANGKOTE
KAVEH HOSSEINI
ASHLEY ROLAND
DREW HELMS
ANN KARIUKI
DERIK SARKESIANS
SUZANNE FRIAS
LILYA DISHCHYAN
DANIEL DUBIN
HAYK GHALUMYAN
MADINA OMAR
KATHERINE AGBAYANI
MARK WILSON

OF COUNSEL
ARI MARKOW

* Admitted in Multiple Jurisdiction
† Admitted to Practice Law in Arizona only
‡ Admitted to Practice Law in Alabama

# MANNING & KASS
## ELLROD, RAMIREZ, TRESTER LLP
### ATTORNEYS AT LAW

ONE BATTERY PARK PLAZA
4TH FLOOR
NEW YORK, NEW YORK 10004
TELEPHONE: (212) 858-7769
FACSIMILE: (212) 858-7543
WEB SITE: WWW.MANNINGLLP.COM

September 11, 2017

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
**VIA E-MAIL & U.S. CERTIFIED MAIL RETURN RECEIPT**

Mr. Issa Haddad
Haddad Law Firm
470 N. Old Woodward Ave, Ste 250
Birmingham, MI 48009

Sara Nobles, Vice President
Affinity Loss Management Services
7509 NW Tiffany Springs Pkwy #200
Kansas City, MO 64153

|  |  |  |
|---|---|---|
| Re: | *Insured:* | Affinity Insurance Program Marketing, LLC. |
|  | Claimant: | 18912 Lahser Road |
|  | Policy No.: | LPHS-L-00106 |
|  | Claim No.: | 740159972820 |
|  | MKERT File No.: | 5265-56973 |
|  | Date of Notice: | 07/03/2017 |
|  | Date of Loss: | 06/30/2017 |

Dear Mr. Haddad,

    This office has been retained by inTrust, a division of Cunningham Lindsey, as third party administrator ("TPA") for  Hamilton Specialty Insurance Company ("Hamilton") and Certain Underwriters At Lloyd's of London (Lloyd's) (hereinafter the "Insurers"), which issued Commercial Property Policy number LPHS-L-00106 (the "Policy"), to Affinity Insurance Program Marketing, LLC., ("Affinity Insurance / the Insured").  This correspondence shall replace our prior correspondence dated August 10, 2017.

LOS ANGELES
801 S. Figueroa St, 15th Floor
Los Angeles, CA 90017-3012
Phone (213) 624-6900 • Fax (213) 624-6999

ORANGE COUNTY
19800 MacArthur Blvd, Suite 900
Irvine, CA 92612
Phone (949) 440-6690 • Fax (949) 474-6991

SAN DIEGO
550 West C Street, Suite 1900
San Diego, CA 92101
Phone (619) 515-0269 • Fax (619) 515-0268

SAN FRANCISCO
333 Bush Street, 27th Floor
San Francisco, CA 94104
Phone (415) 217-6990 • Fax (415) 217-6999

PHOENIX
3636 North Central Avenue, 11th Floor
Phoenix, AZ 85012
Phone (602) 313-5469 • Fax (602) 313-5499

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 2

In considering whether the Policy provides coverage, we have reviewed the first notice of loss ("FNOL") dated July 3, 2017, Earl R. Winters, Jr., General Adjuster-Environmental Claims, for inTrust to Hamilton, Richard Bailey, Senior Adjuster – Property and Energy, at Ironshore, and Jim Devall at CL Global; correspondence dated July 11, 2017, from Wendi Spilar, Underwriting Analyst, at Loan Protector Insurance Services with attached General Liability Notice of Occurrence/Claim Form dated June 30, 2017 (the "Accord Form"); correspondence dated July 11, 2017 from Sara Nobles to Earl Winters attaching a copy of the Policy and the underwriting file; and email correspondence from Issa G. Haddad with attached copy of the Rental Agreement dated September 8, 2016.

**A.     Background**

The Insurers received notice of the above referenced FNOL on or about July 3, 2017, notifying the Insurers of a fire that occurred in the early morning of Tuesday, June 27, 2017, at 18912 Lahser Road, Detroit, Michigan 48219 (the "Property"). The Property, which had been leased to Charles Sturkey ("Resident/Tenant") through a Rental Agreement executed on September 8, 2016, between Mr. Sturkey and Emauelita Walker, Agent/Owner, of Transition Insurance Program Marketing, LLC ("Landlord/Owner"); was occupied by twelve individuals at the time of the fire. The fire completely destroyed the Property, fatally injured three of the residents and seriously injured one resident.

Transition Investments, LLC., is a member of the residential real estate insurance program called REIGuard, that is offered by the National Real Estate Insurance Group and serviced by Affinity Group Management. Affinity Group Management procured the Policy for the Insured, Affinity Insurance Program Marketing, LLC., on behalf of its member, Transition Investment, LLC.

**B.     The Policy**

The Insurers, who in accordance with Section 3 of the Declarations and the Security Endorsement of the Policy equally share the Limits of Insurance, issued the Policy to Affinity Insurance bearing effective dates of December 1, 2016 through December 1, 2017. In accordance with the attached Schedule dated December 14, 2016, Section 4. "Limits of Insurance", the Policy provides Commercial General Liability Coverage with a $1,000,000 per Occurrence Limit, $50,000 for any One Fire Damage, and $5,000 Medical Payment for any one Person with coverage up to a $3,000,000 General Aggregate Limit, subject to a $0 deductible. In addition Section 5. "Coverage", states:

This Insurance applies to "bodily injury", "property damage", "personal injury", or "medical payments" arising out of assets that are:

2.      controlled or managed by the Insured

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 3

Additional relevant policy provisions are referenced below; please refer to the Policy for the complete terms and conditions.

The Policy's Insuring Agreements provides, in pertinent part:

## SECTION I.  COVERAGES

## COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      **Insuring Agreement**

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**   This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence". The "occurrence" must take place in the "coverage territory".  We will have the right and duty to defend any "suit" seeking those damages.  But:

            (1)      The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**

            (2)      We may investigate and settle any claim or "suit" at our discretion; and

                    ******

      b.      Damages because of "bodily injury" including damages claims by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

      c.      "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

2.      **Exclusions**

This insurance does not apply to:

      b.      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
            (1)      Assumed in a contract or agreement that is in an "insured contract",

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 4

**Section 2. Exclusions, as amended by the HABITABILITY VIOLATION EXCLUSION No. ACA-GL-USA-030.**

This insurance does not apply to damages or expenses due to "bodily injury", "property damage…..arising out of or resulting from the alleged or actual violations(s) of the following, as they pertain to "habitability", including amendments thereto:

(a)  Civil Codes;

(b)  Health and Safety Codes:

(c)  Any Housing and Urban Development laws, ordinances or statutes….

(e)  Federal, State or local section 8 (government subsidized) or programs;

(f)  Any administrative rules or regulations pertaining to any of the foregoing, including but not limited to those promulgated by local municipalities….

We shall not have any duty to defend any claim, proceeding or "suit" in any way based on, attributed to, arising out of, resulting from or any manner related to that which is described above, including but limited to, the diminished value of property or mental, physical or emotional injuries alleged.

******

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above-mentioned Certificate, other than as above stated.
**The Policy further contains EXCLUSION – TENANTS ENDORSEMENT,** which states as follows:

This insurance does not apply to liability or suits arising from Tenants or the acts of Tenants.

**COVERAGE C.  MEDICAL PAYMENTS**

**1.  Insuring Agreement**

a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1)  On premises you own or rent;

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 5

   b.  We will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.  We will pay reasonable expenses for:

     (1)  First aid at the time of an accident

     (2)  Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

     (3)  Necessary ambulance, hospital, professional nursing and funeral services.

**2.**  **Exclusions**

  We will not pay expenses for "bodily injury"

    g.  Excluded under Coverage A.

**SECTION II.   WHO IS AN INSURED**

1.  If you are designated in the Schedule as:

   a.  An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

   b.  A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**SECTION V.  DEFINITIONS**

6.  "Insured contract" means:

   a.  A lease of premises.

   g.  That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or

9.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 6

12.    "Property damage" means:

     a.    Physical injury to tangible property, including all resulting loss of use of that property; or

     b.    Loss of use of tangible property that is not physically injured.

As per the **HABITABILITY VIOLATION EXCLUSION ENDORSEMENT No. ACA-GL-USA-030, SECTION V- DEFINITIONS section is modified as follows:**

"Habitability" means safe living environment and/or fit occupancy by human beings in a sanitary, healthy, habitable and tenantable condition.

**C.    COVERAGE OPINION**

     The Policy provides coverage damages the insured becomes legally obligated to pay because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period.

     We would like to draw your attention to the pertinent and applicable sections of the Rental Agreement dated September 1, 2016, which states as follows:

**OCCUPANCY**

The premises shall be used as a residence with no more than 1 adult and 2 children, and for no other purpose without the written consent of the Owner.  Occupancy by guests staying overnight 14 days will be considered a breach of this Rental Agreement unless Resident/Tenant obtains Owner's written consent.

**ORDINANCES AND STATUTES**

Resident/Tenant shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the use of the legal premises.  **Owner/Landlord has the right to immediate eviction of resident/tenant for any illegal activity on the premises.**

**LIABILITY OF TENANT**

                       ****

The Owner shall be released from Liability arising from the loss, damage, or injury the property of Resident/Tenant, invitees, and any other person, caused by fire or other casualty for which insurance is carried by the Resident/Tenant under a policy

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 7

which permits the waiver of liability and waives the insurer's rights of subrogation, to the extent any recovery by the injured party under the policy.

**\*\*\*\***

### INSURANCE COVERAGE

Resident/Tenant acknowledges and understands that Owner's fire hazard, and liability coverage for injury or damages to persons or property, both real and personal, **does not extend to or on behalf of the Resident/Tenant. Therefore, Owner <u>recommends</u> that Resident/Tenant obtains his/her own insurance coverage against such risk.**

Based upon the terms and conditions of the Rental Agreement coupled with the Exclusion – Tenants Endorsement of the Policy, the Landlord/Owner is not responsible for damage or injury to the Resident/Tenants' person, property, invitees or any other person that is caused by fire or any other casualty. Hence, coverage under the Policy is precluded for the property loss or bodily injury suffered by Resident/Tenant or the individuals, who were either residents or invitees of Resident/Tenant; including medical costs.

Notwithstanding the above, we would like to further draw your attention to the Habitability Violation Exclusion Endorsement which excludes cover for "bodily injury" or "property damage" arising out of or resulting from the alleged or actual violation(s) of:

(b)    Any Housing and Urban Development laws, ordinance or statutes;
(e)    Federal. State or local section 8 (government subsidized) or programs; or
(f)    Any administrative rules or regulations pertaining to any of the foregoing, including but not limited to those promulgated by local municipalities.

Based upon our investigation, it appears that the Property is Section 8 subsidized housing and is thereby regulated by *Title 24 – Housing and Urban Development - Code of Federal Regulation ("CFR") Part 982 – Section 8 Tenant-Based Assistance: Housing Choice Voucher Program*. The Housing Choice Voucher ("HCV") program is generally administered by state or local governmental entities called public housing agencies ("PHA"). As the Property is located in Detroit, Michigan, the Detroit Housing Commission ("DHC") is the PHA tasked with the administration of the HCV program called the Housing Choice Voucher Administrative Plan; which became effective on July 1, 2016. The HCV program, provides rental assistance to help eligible, low-income households pay their rent. In accordance with 24 CFR 985.52 the DHC, as an administrator of the HCV program, is required to comply with Housing and Urban Development ("HUD") regulations and other HUD requirements for the program.

We would like to draw your attention to 24 CFR 982.401, Housing Quality Standards (HQS), which provides the performance and acceptability criteria for key aspects of housing

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 8

quality under the HCV program that property owners are required to meet at the commencement and sustain throughout the assisted tenancy. Section 982.401 states in pertinent part as follows:

(d). *Space and Security*

(1) *Performance requirement.* The dwelling must provide adequate space and security for the family.

(2) *Acceptability criteria.*
 (i) At a minimum, the dwelling unit must have a living room, a kitchen area, and a bathroom.
 (ii) The dwelling unit must have at least one bedroom or living/sleeping room for each two persons. Children of the opposite sex, other than very young children, may not be required to occupy the same bedroom or living/sleeping room.

(h) *Interior air quality*

(2) *Acceptability criteria*
 (iv) Any room used for sleeping must have at least one window. If the window is designed to be openable, the window must work.

(k) *Access performance requirement.* The dwelling unit must be able to be used and maintained without unauthorized use of other private properties. The building must provide an alternate means of exit in case of fire (such as fire stairs or egress through windows).

(n) *Smoke detectors performance requirement.*

(1)......each dwelling unit must have at least one battery-operated or hand-wired smoke detector, in proper operating condition, on each level of the dwelling unit, including basement but excepting crawl spaces and unfinished attics. Smoke detectors must be in installed in accordance and meet the requirements of the National Fire Protectors Association Standard (NFPA) 74 (or its successor standards).

Based upon both the information provided and our subsequent investigation of the Property, it appears that the stairway was the only exit from the second floor. Hence, the Property did not provide an alternate means of exit in case of fire as required by 24 CFR 982.401(k). In addition, the Property only had one smoke detector located in the basement in violation of 24 CFR 982.401(n)(1). Finally, as the victims had no other means of escape once the stairway was burned away, it is clear that the bedroom did not have the required window that could be opened in violation of CFR 982.401(h)(2)(iv). Hence, coverage is precluded under the Policy's Habitability Violation Exclusion Endorsement Sections (b), (e), and (f), due to the fact

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 9

that the Property failed to comply with the requirements of 24 CFR Section 982.401; (h)(2)(iv); (k), and (n) as well as applicable state and local laws.

Coverage is further precluded under the Habitability Violation Exclusion Endorsement Sections (b),(e), and (f) of the Policy due to the Insured's violation of  24 CFR Section 982.401(d)(1) & (2) and Section 5-2B of the DHC Housing Choice Voucher Administrative Plan, which requires that residents have at least one bedroom or living/sleeping room for each two persons in the home.  This requirement is further defined by subsidy standards established by the DHC in Section 5-2B of the Housing Choice Voucher Administrative Plan, which permits a minimum of three and a maximum of eight residents in a three bedroom home.  Hence, given the fact that the Property, which contained three bedrooms, had twelve occupants on the day it was damaged by the fire; both 24 CFR 401(d)(1) & (2)  and Section 5-2B of the Housing Choice Voucher Administrative Plan have been violated and coverage under the Policy is thereby precluded under the Habitability Violation Exclusion Endorsement Sections (b), (e), and (f).

**As there is no coverage under the Policy, the Insurers will not respond on behalf of Affinity Insurance Program Marketing, LLC.   The Insurers suggest in the event litigation is filed against Affinity in relation to this matter that you hire counsel to protect your interest without delay. In addition, if you have any other insurance policies which may respond to this matter, you should report the matter to the issuing carriers immediately.**

The Insurer's position with respect to coverage for the matter is based on the documentation submitted to date and the currently known facts and allegations. The Insurers continue to fully reserves all of its rights, privileges and defenses under the Policy and any other policies, at law and in equity, regardless of whether or not specially referred to herein, including the right to supplement coverage on additional or alternative bases as further investigation and development of facts and information may warrant; including any applications and information or documentation submitted to and relied upon by the Insurers issuance of the Policy.

Very truly yours,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

Jeanette L. Dixon, Esq.

JD/jld

cc:    Melissa Hill
       SVP Chief Claims officer
       Hamilton Group
       Melissa.Hill@hamiltongroup.com

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

**ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL**
Mr. Issa Haddad
**Re: Affinity Insurance Program Marketing, LLC.**
September 11, 2017
Page 10

> Earl Winters
> Cunningham Lindsey NA
> Ewinters@cl-na.com
>
> Wendi Spilar
> Loan Protector Insurance Service
> A Willis Towers Watson Company
> Wendispilar@loanprotector.com
>
> Terry Spicer
> Acapella Underwriting
> Terry.Spicer@acapellaunderwriting.com
>
> Richard Bailey
> Pembroke Underwriting Division
> Richard.Bailey@pembrokeunderwriting.com

# EXHIBIT 2

Lisa Rutledge     2/14/2018 2:59 PM     WAYNE COUNTY CLERK     Cathy M. Garrett     FILED IN MY OFFICE     17-016360-NO

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

KELVIN MARTIN, Personal Representative of the
Estate of MICHELLE R. FORD; PRECIOUS FORD,
Personal Representative of the Estate of JAYSEAN
FORD, and PRECIOUS FORD, Personal Representative
of the Estate of JAYCEON FORD and PRECIOUS FORD
Next Friend of SEMAJ FORD, a Minor;

Case No:  17-016360-NO

PLAINTIFFS;

Hon:  JOHN MURPHY

-v-

TRANSITION INVESTMENTS, LLC, a Michigan Limited
Liability Corporation,

DEFENDANT.

| | |
|---|---|
| MICHAEL L. BATTERSBY (P-29012) | BARRY M. FELDMAN (P26434) |
| THE SAM BERNSTEIN LAW FIRM | BARRY M. FELDMAN, PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 31731Northwestern Hwy., Suite 333 | 25800 Northwestern Highway |
| Farmington Hills, MI 48334 | 10th Floor – Maccabees Center |
| 800-588-7121 | Southfield, MI 48075 |
| mbattersby@sambernstein.com | (248) 353-2444 |
| lfuller@sambernstein.com | Barry@feldmanlaw.us |

THE
**SAM BERNSTEIN**
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

## **CONSENT JUDGMENT**

At a session of said Court held in the Circuit Court in the
City of Detroit, County of Wayne, State of Michigan,
this _____ day of _____, 2018.

PRESENT: ____ JUDGE JOHN A. MURPHY ____

THIS MATTER having come before the Court on Plaintiff's Motion to Approve Consent

Judgment and having heard oral argument on February 12, 2018 and the Court having inquired

into the merits of this cause, taken testimony, determined that the proposed Consent Judgment

represents fair and equitable compensation, and expressly found that the settlement is fair, reasonable and in the best interests of all parties;

NOW THEREFORE, Judgment is hereby entered in favor of the Plaintiffs and against the Defendant in the aggregate amount of Three Million Dollars ($3,000,000.00) plus costs to be assessed.

/s/ John Murphy
Circuit Court Judge

Approved as to form:

/s/ Michael L. Battersby
Michael L. Battersby (P29012)
The Sam Bernstein Law Firm, LLC
Attorneys for the Plaintiffs

/s/ Barry M. Feldman
Barry M. Feldman (P26434)
Barry M. Feldman, PLCC
Attorney for Def. Transition Investments

Dated: February 12, 2018

Dated: February 12, 2018

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

2

# EXHIBIT 3



A Willis Company

## Certificate of Insurance

This Insurance is effected with the Underwriters identified on the Declarations Page.

This Certificate is issued in accordance with the limited authorization granted to the Correspondent by the Underwriters and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

The Assured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

**Willis of Ohio, Inc.**
**dba Loan Protector Insurance Services**
**6000 Cochran Road**
**Solon, OH  44139**

**CERTIFICATE PROVISIONS**

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters identified on the Declarations Page.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

IOWA SURPLUS LINES NOTICE

This policy is issued, pursuant to Iowa Code section 515.120, by a non-admitted company in Iowa and as such is not covered by the Iowa Insurance Guaranty Association.

LMA9047
01 September 2013

COMMERCIAL GENERAL LIABILITY POLICY

This Declaration page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA2868).

Previous Policy No.:    N/A
Authority Ref. No.:    B080117391U15

Current Policy No.:    LPHS-L-00106

**1  Name and Address of the Assured**

**Affinity Insurance Program Marketing LLC**
**5550 Wild Rose Lane, Ste 400**
**West Des Moines, IA 50266**

**2  Effective**

From:    12/01/2016
To:    12/01/2017

Both days at 12.01 a.m. Local Standard Time at the location of the property insured.

**3  Insurance is effective with**

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON** | **Percentage:** | **50%** |
| **HAMILTON SPECIALTY INSURANCE COMPANY** | **Percentage:** | **50%** |
| | **TOTAL** | |
| | **PERCENTAGE:** | **100%** |

**4**

| | | |
|---|---|---|
| **Perils:** | Commercial General Liability Insurance | |
| **Limit of Liability:** | **OCCURRENCE LIMIT** | USD1,000,000 |
| | **GENERAL AGGREGATE**<br>(Other than Products – Completed Operations) | USD3,000,000 |
| | **AGGREGATE LIMIT**<br>Products and Completed Operations<br>(Non-Manufacturing Operations only) | Not Covered |
| | **OCCURRENCE LIMIT**<br>(Personal and Advertising Injury) | Not Covered |
| | **FIRE DAMAGE**<br>Any One Fire | USD50,000 |
| | **MEDICAL PAYMENTS**<br>Any One Person | USD5,000 |
| **Deductible:** | **USD Nil** | |

Page 1 of 3

**Premium and Rates:**   This Insurance shall be subject to a Minimum and Deposit Premium of **USD0 (zero)** which shall be adjusted, within fifteen days of the last day of each monthly period, in the manner set forth herein at the following rates:

**Residential (1-4 Family) Dwellings**

**$50.00 USD per unit - annual**

---

5   Forms attached hereto and Special Conditions

**CONDITIONS:**

a) (as attached)  Commercial General Liability Coverage Wording
b) 30 Day Cancellation Clause (as contained in the Wording)
c) Monthly reports of values to Underwriters within 15 days of the last day of each reporting period (as contained in the Wording)
d) Monthly adjustments of Premium (as contained in the Wording)
e) NMA1998 (24/04/86) Service of Suit Clause (U.S.A.), nominee of which is stated in item 6 below.
f) LMA5219 (12/01/15) U.S. Terrorism Risk Insurance Act of 2002 as amended Not Purchased Clause
g) NMA1256 (17/03/60) Nuclear Incident Exclusion Clause – Liability – Direct (Broad) (U.S.A.)
h) NMA2918 (08/10/01) War and Terrorism Exclusion Endorsement
i) NMA2340 (24/11/88) U.S.A. and Canada, Land, Water, and Air Exclusion, Seepage and/or Contamination Exclusion, Debris Removal Endorsement (Combined Clause)
j) NMA2962 (06/02/03) Biological or Chemical Materials Exclusion
k) NMA2802 (17/12/97) Electronic Date Recognition Exclusion (EDRE)
l) LMA3100 (15/09/10)  Sanction Limitation and Exclusion Clause
m) LMA5018 (14/09/05)  Microorganism Exclusion (Absolute)
n) CG2107 (05/14) Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – Limited Bodily Injury Exception not Included
o) (as attached)  Absolute Pollution Exclusion
p) (as attached)  Asbestos Liability Exclusion
q) (as attached)  Punitive Damages Exclusion
r) (as attached)  Lead Contamination Exclusion
s) (as attached)  Abuse and Molestation Exclusion
t) (as attached)  Financial Endeavours Exclusion
u) (as attached)  Employment-Related Practices Exclusion
v) (as attached)  Communicable Disease Exclusion
w) (as attached)  Voluntary Labor Exclusion
x) (as attached)  Independent Contractor Exclusion
y) (as attached)  Assault and Battery Exclusion
z) (as attached)  Fiduciary Liability Exclusion
aa) (as attached)  Professional Liability Exclusion
bb) (as attached)  Products – Completed Operations Hazard Exclusion
cc) (as attached)  Certain Properties Exclusion
dd) (as attached)  Tenants Exclusion
ee) CG 21 38 11 85  Personal and Advertising Injury Exclusion
ff) CG 25 04 05 09  Designated Locations(s) General Aggregate Limit
gg) NAP0043 03 15  Animal / Reptile / Insect Endorsement
hh) ACA-GL-USA-030  Habitability Violation Exclusion
ii) LMA5096 Several Liability Notice (Combined Certificate)
jj) LMA9047 Iowa Surplus Lines Notice
kk) LMA9104 (12/01/15)  Signed Policyholder Disclosure Notice of Terrorism Insurance Coverage

**CHOICE OF LAW AND
JURISDICTION:** This Insurance shall be governed by and construed in accordance with the law of the State of Iowa. Each party agrees to submit to the exclusive jurisdiction of any competent court within the United States of America.

6   **Service of Suit may be made upon**

Mendes & Mount, LLP., 750 Seventh Avenue, New York, NY 10019-6829

7   **In the event of a Claim, please notify the following**

Willis of Ohio, Inc. DBA Loan Protector Insurance Services
Attn: Claims Department
6000 Cochran Road
Solon, OH 44139
claims@loanprotector.com

TPA:
Cunningham Lindsey, US, Inc.
3030 N. Rocky Point Drive W, Suite 630
Tampa, FL 33607

**Dated:**   December 14, 2016

**Willis of Ohio, Inc. dba Loan Protector
Insurance Services**

By: _____
Correspondent

Page 3 of 3

SCHEDULE

**Policy Number:**        LPHS-L-00106

1.  **Title of the Assured:**

    **Affinity Insurance Program Marketing LLC**


2.  **Address of the Assured:**

    **5550 Wild Rose Lane, Ste 400**
    **West Des Moines, IA 50266**


3.  **Policy Period:**

    **From:**   12/01/2016

    **To:**     12/01/2017

    Both days at 12.01 a.m. Local Standard Time at the location of the property insured.


4.  **Limits of Insurance:**

    | | |
    |---|---|
    | **OCCURRENCE LIMIT** | USD1,000,000 |
    | **GENERAL AGGREGATE** (other than Products - Completed Operations) | USD3,000,000 |
    | **AGGREGATE LIMIT** Products and Completed Operations (Non-Manufacturing Operations only) | Not Covered |
    | **OCCURRENCE LIMIT** Personal and Advertising Injury | Not Covered |
    | **FIRE DAMAGE** Any One Fire | USD50,000 |
    | **MEDICAL PAYMENTS** Any one Person | USD5,000 |

**5.   Coverage:**

This Insurance applies to "bodily injury", "property damage", "personal injury", "advertising injury" or "medical payments" arising out of assets that are:

1.      owned or acquired through foreclosure;
2.      controlled or managed by the Insured;
3.      properties in which the Insured is a mortgagee in possession;
4.      deed in lieu of foreclosure;

However in no event shall this policy provide any coverage whatsoever for damages and/or defense costs incurred by any Borrower who at any time has entered into a loan arrangement with the Named Insured in connection with a Covered Property.

This insurance does not apply to "bodily injury" or "property damage" which occurs or to "personal injury" or "advertising injury" arising out of an offense before the date that liability for the relevant Covered Property attached under this Policy in accordance with the reporting provisions contained herein.

**6.   Deductible:**

A deductible of USD0 (zero) shall apply to each occurrence arising out of "bodily injury", "property damage", "personal injury" or "advertising injury" coverage granted under this Policy.

**7.   Premium and Rates:**

This Insurance shall be subject to a Minimum and Deposit Premium of USD0 (zero) which shall be adjusted, within fifteen days of the last day of each monthly period, in the manner set forth herein at the following rates:

**Residential (1-4 Family) Dwellings**

8.    Notification of Claims:

Any happening likely to give rise to a claim under this Policy shall be notified in writing to:

Willis of Ohio, Inc. DBA Loan Protector Insurance Services
Attn: Claims Department
6000 Cochran Road
Solon, OH 44139
claims@loanprotector.com

TPA:
Cunningham Lindsey, US, Inc.
3030 N. Rocky Point Drive W, Suite 530
Tampa, FL 33607

as soon as practicable but in no event later than sixty days from the date of said happening.

9.   Territorial Limits:

United States of America

Dated:  December 14, 2016

## COMMERCIAL GENERAL LIABILITY COVERAGE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Schedule. The words "we", "us" and "our" refer to Underwriters providing this insurance.

The word "insured" means any person or organisation qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION 1 - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

1.  **Insuring Agreement.**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence". The "occurrence" must take place in the "coverage territory". We will have the right and duty to defend any "suit" seeking those damages. But:

        (1)  The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**.

        (2)  We may investigate and settle any claim or "suit" at our discretion; and

        (3)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverages A or B or medical expenses under Coverage C.

    b.  Damages because of "bodily injury" include damages claimed by any person or organisation for care, loss of services or death resulting at any time from the "bodily injury".

    c.  Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

2.  **Exclusions**

    This insurance does not apply to:

    a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b.  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1)  Assumed in a contract or agreement that is an "insured contract", or

        (2)  That the insured would have in the absence of the contract or agreement.

c.   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)   Causing or contributing to the intoxication of any person;

(2)   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.   Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e.   "Bodily injury" to:

(1)   An employee of the insured arising out of and in the course of employment by the insured; or

(2)   The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f.   (1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants":

(a)   At or from premises you own, rent or occupy;

(b)   At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

(c)   Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organisation for whom you may be legally responsible; or

(d)   At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(i)   if the "pollutants" are brought on or to the site or location in connection with such operations; or

(ii)   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise the         "pollutants".

(2)   Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat detoxify or neutralise "pollutants".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapour, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.  "Bodily injury" or "property damage" arising out of the ownership, maintenance use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)  Less than 26 feet long; and

(b)  Not being used to carry persons or property for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided that "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f. (2) or f. (3) of the definition of "mobile equipment" (Section V.8.).

h.  "Bodily injury" or "property damage" arising out of

(1)  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)  The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i.  "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war, War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.  "Property damage" to:

(1)  Property you own, rent, or occupy;

(2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)  Property loaned to you;

(4)  Personal property in your care, custody or control;

(5)  That particular part of real property on which you are or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.    "Property damage" to "your work" arising out if it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

l.    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product" or "your work" after it has been put to its intended use.

m.    Damages claimed for any loss, costs or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or dispersal of:

    (1)    "Your product";
    (2)    "Your work"; or
    (3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organisation because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.    **Insuring Agreement.**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.** We will have the right and duty to defend any "suit" seeking those damages. But:

    (1)    The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;**

    (2)    We may investigate and settle any claim or "suit" at our discretion; and

    (3)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverage A or B or medical expenses under Coverage C.

b.    This insurance applies to "personal injury" only if caused by an offence:

    (1)    Committed in the "coverage territory" during the policy period; and

    (2)    Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

c.    This insurance applies to "advertising injury" only if caused by an offence committed:

(1)     In the "coverage territory" during the policy period; and

(2)     In the course of advertising your goods, products or services.

2.     **Exclusions**

This insurance does not apply to:

a.     "Personal injury" or "advertising injury".

(1)     Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2)     Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3)     Arising out of the wilful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4)     For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b.     "Advertising injury" arising out of:

(1)     Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2)     The failure of goods, products or services to conform with advertised quality of performance

(3)     The wrong description of the price of goods, products or services; or

(4)     An offence committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

1.     **Insuring Agreement**

a.     We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1)     On premises you own or rent;

(2)     On ways next to premises you own or rent; or

(3)     Because of your operations;

provided that:

(1)     The accident takes place in the "coverage territory" and during the policy period;

(2)     The expenses are incurred and reported to us within one year of the date of the accident; and

(3)     The injured person submits to examination, at our expense, by physicians or our choice as often as we reasonably require.

b.     We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1)     First aid at the time of an accident

Page 8 of 19

    (2)    Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3)    Necessary ambulance, hospital, professional nursing and funeral services.

**2.**    **Exclusions**

We will not pay expenses for "bodily injury"

a.    To any insured.

b.    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.    To a person injured on that part of premises you own or rent that the person normally occupies.

d.    To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e.    To a person injured while taking part in athletics.

f.    Included within the "products-completed operations hazard".

g.    Excluded under Coverage A.

h.    Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

We will pay, with respect to any claim or "suit" we defend:

1.    All expenses we incur.

2.    Up to USD250 for cost of bail bonds, required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3.    The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defence of the claim or "suit", including actual loss of earnings up to USD100 a day because of time off from work.

5.    All costs taxed against the insured in the "suit".

6.    Pre-judgement interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgement interest based on that period of time after the offer.

7.    All interest on the full amount of any judgement that accrues after the entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments are included within the limits of insurance.

**SECTION II- WHO IS AN INSURED**

1.    If you are designated in the Schedule as:

    a.    An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

    b.    A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respects to the conduct of your business.

    c.    An organisation other than partnership or joint venture, you are an insured. Your executive officers and directors are insured, but only with respect to their duties as your offices or directors. Your stockholders are also insured, but only with respect to their liability as stockholders.

2.    Each of the following is also an insured:

    a.    Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, none of these employees is an insured for:

        (1)    "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment; or

        (2)    "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

        (3)    "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

    b.    Any person (other than your employee), or any organisation while acting as your real estate manager.

    c.    Any person or organisation having proper temporary custody of your property if you die, but only:

        (1)    With respect to liability arising out of the maintenance or use of that property; and

        (2)    Until your legal representative has been appointed,

    d.    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage part.

3.    With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organisation responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organisation for this liability. However, no person or organisation is an insured with respect to:

    a.    "Bodily injury" to a co-employee of the person driving the equipment; or

    b.    "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.    Any organisation you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organisation. However:

    a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organisation or the end of the policy period, whichever is earlier

    b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or

formed the organisation; and

c.      Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offence committed before you acquired or formed the organisation.

No person or organisation is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Schedule.

## SECTION III - LIMITS OF INSURANCE

1.     The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

     a.     Insureds;

     b.     Claims made or "suits" brought; or

     c.     Persons or organisations making claims or bringing "suits".

2.     The General Aggregate Limit is the most we will pay for the sum of:

     a.     Medical expenses under Coverage C; and

     b.     Damages under Coverage A and Coverage B.

3.     Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of:

     a.     Damages under Coverage A and Coverage B; and

     b.     Medical expenses under Coverage C

because of all "bodily injury", "property damage", "personal injury" and "advertising injury" arising out of any one "occurrence".

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Schedule, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1.     **Bankruptcy**

Bankruptcy or insolvency of the insured or of the Insured's estate will not relieve us of our obligations under this Coverage Part.

2.   **Duties In The Event Of Occurrence, Claim Or Suit**

    a.   You must see to it that we are notified promptly of an "occurrence" which may result in a claim. Notice should include:

        (1)   How, when and where the "occurrence" took place; and

        (2)   The names and addresses of any injured persons and witnesses.

    b.   If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

    c.   You and any other involved insured must:

        (1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)   Authorise us to obtain records and other information;

        (3)   Cooperate with us in the investigation, settlement or defence of the claim or "suit" and

        (4)   Assist us, upon our request, in the enforcement of any right against any person or organisation which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.   No insureds will, except at their own cost, voluntarily take a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.   **Legal Action Against Us.**

No person or organisation has a right under this Coverage Part:

    a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organisation may sue us to recover on an agreed settlement or on a final - judgement against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.   **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A to B of this coverage Part, our obligations are limited as follows:

    a.   Primary Insurance

        This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all other insurance by the method described in c. below.

b.   Excess Insurance

This insurance is excess over any of the other insurance, whether excess, contingent or on any other basis:

(1)   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"

(2)   That is Fire insurance for premises rented to you; or

(3)   If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance; we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)   The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this Coverage Part.

c.   Method of Sharing

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal share, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.   Premium Audit.**

a.   We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.   Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named Insured. If the sum of the advance and audit premiums paid for the policy term is greater that the earned premium, we will return the excess to the first named Insured.

c.   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

By accepting this Policy, you agree:

   a.   The statements in the Schedule are accurate and complete;

   b.   Those statements are based upon representations you made to us and

   c.   We have issued this Policy in reliance upon your representations.

7. **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a.   As if each Named Insured were the only Named Insured; and

   b.   Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer of Rights Of Recovery Against Others to Us.**

If the Insured has rights to recover all or part of any payment we have made under this Coverage part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **Cancellation**

   a.   The first Named Insured shown in the Schedule may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

   b.   We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1)   10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   (2)   30 days before the effective date of cancellation if we cancel for any other reason.

   c.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d.   Notice of cancellation will state the effective date of cancellation.  The Policy period will end on that date.

   e.   If this Policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro-rata.  If the first Named Insured cancels, the refund may be less that pro-rata.  The cancellation will be effective even if we have not made or offered a refund.

   f.   If notice is mailed, proof of mailing will be sufficient proof of notice.

10. **Changes**

This Policy contains all the agreements between you and us concerning the issuance afforded.  The first Named Insured shown in the Schedule is authorized to make changes in the terms of this Policy with our consent.  This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

11.     **Examination of your Books and Records**

We may examine and audit your books and records as they relate to this Policy at any time during the Policy period and up to three years afterward.

12.     **Inspections and Surveys**

We have the right but are not obligated to:

a.      Make inspections and surveys at any time;
b.      Give you reports on the conditions we find; and
c.      Recommend changes.

Any inspections, surveys, report or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

a.      Are safe and healthful; or
b.      Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

13.     **Premiums**

The first Named Insured shown in the Schedule:

a.      Is responsible for the payment of all premiums; and
b.      Will be the payee for any return premiums we pay.

14.     **Transfer of your Rights and Duties under this Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## SECTION V - DEFINITIONS

1.      "Advertising injury" means injury arising out of one or more of the following offences:

a.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b.      Oral or written publication of material that violates a person's right of privacy;

c.      Misappropriation of advertising ideas or styles of doing business; or

d.      Infringement of copyright, title or slogan.

2.      "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

Page 15 of 19

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The USA;

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c.  All parts of the World if:

        (1)  The injury or damage arises out of:

            (a)  Goods or products made or sold by you in the territory described in a. above; or
            (b)  The activities of a person whose home is in the territory described in a). above, but is away for a short time on your business; and

        (2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfil the terms of a contract or agreement;

        if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

6.  "Insured contract" means:

    a.  A lease of premises;

    b.  A sidetrack agreement;

    c.  An easement of license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

    d.  Any other easement agreement, except in connection with construction of demolition operations on or within 50 feet of a railroad;

    e.  An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

    f.  An elevator maintenance agreement; or

    g.  That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a.    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (1)    Preparing, approving or failing to prepare or approve maps, drawings, opinion, reports, surveys, change orders, designs or specifications; or

    (2)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

b.    Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in a. above and supervisory, inspection or engineering services; or

c.    That indemnifies any person or organization for damages by fire to premises rented or loaned to you.

7.    "Loading or unloading" means the handling of property:

a.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b.    While it is in or on an aircraft, watercraft or "auto"; or

c.    While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

8.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.    Vehicles maintained for use solely on or next to premises you own or rent;

c.    Vehicles that travel on crawler treads;

d.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1)    Power cranes, shovels, loaders, diggers or drills; or

    (2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.    Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2)    Cherry pickers and similar devices used to raise or lower workers;

f.    Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1)     Equipment designed primarily for:

  (a)     Snow removal;
  (b)     Road maintenance, but not construction or resurfacing;
  (c)     Street cleaning;

(2)     Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3)     Air compressors, pumps and generators, including spraying, welding, building cleaning, geographical exploration, lighting and well servicing equipment.

9.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

10.     "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

  a.     False arrest, detention or imprisonment;

  b.     Malicious prosecution;

  c.     Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

  d.     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

  e.     Oral or written publication of material that violates a person's right of privacy.

11.     a.     "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1)     Products that are still in your physical possession; or
    (2)     Work that has not yet been completed or abandoned.

  b.     "Your work" will be deemed completed at the earliest of the following times:

    (1)     When all of the work called for in your contract has been completed.
    (2)     When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
    (3)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  c.     This hazard does not include "bodily injury" or "property damage" arising out of:

    (1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;
    (2)     The existence of tools, uninstalled equipment or abandoned or unused materials;
    (3)     Products or operations for which the classification in the Coverage Part or in our manual of rules includes products or completed operations.

12.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property; or

    b.    Loss of use of tangible property that is not physically injured.

13.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injuries" to which this Insurance applies are alleged.   "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

14.    "Your product" means:

    a.    Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;
        (2)    Others trading under your name; or
        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15.    "Your work" means:

    a.    Work or operations performed by you or on your behalf, and
    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.   Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes & Mount, LLP., 750 Seventh Avenue, New York, NY 10019-6829 (all Assureds except CA domiciled); Mendes & Mount, LLP., 445 South Figueroa Street, 38th Floor, Los Angeles, CA 90071-1601 (CA Domiciled Assureds) and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**U.S. Terrorism Risk Insurance Act of 2002 as amended**
**Not Purchased Clause**

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction:

(a)  with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

(a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**WAR AND TERRORISM EXCLUSION ENDORSEMENT**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**U.S.A. & CANADA**

LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

(a) any loss, damage, cost or expense, or

(b) any increase in insured loss, damage, cost or expense, or

(c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

(a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1.  In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

NMA2340 (24/11/88)                                                                                          Page 1 of 2

    (a) which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    (b) of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2.  In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

    (a) the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of USD25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

    (b) the amount of such costs or expenses as limited in (a) above shall be added to:

        (i) the amount of the Damage or Destruction; and

        (ii) all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

    the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

NMA2340 (24/11/88)                                              Page 2 of 2

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

NMA2962 (06/02/03)

Page 1 of 1

**ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)**

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

(a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

(b) any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

NMA2802 (17/12/97)                                                                                              Page 1 of 1

**SANCTION LIMITATION AND EXCLUSION CLAUSE**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

## MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This Exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, clean up, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides insurance, in whole or in part, for these matters.

## EXCLUSION – ABSOLUTE POLLUTION

It is agreed that Exclusion (f) of Coverage A relating to the discharge, dispersal, release or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

(1)     to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

     (a)     at or from premises you own, rent or occupy;

     (b)     at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of water material;

     (c)     which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

     (d)     at or from any site or location on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations:

          (i)     to test for, monitor, clean up, remove, contain, treat detoxify or neutralize the pollutants, or

          (ii)     if the pollutants are brought on or to the site or location by or for you

(2)     Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

Sub-paragraphs (a) and (d)(ii) of paragraph (1) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

## EXCLUSION – ASBESTOS LIABILITY

It is agreed that this insurance does not apply to any liability for "property damage", "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out of the manufacture of, mining of, use of, sales of, installation of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such property damage, "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time as a result of the manufacture or, mining of, use of, sales of, installation of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

It is further understood and agreed that Underwriters are not obligated to defend any suit or claim against the insured alleging "bodily injury" or "property damage" and seeking damages, if such suit or claims arises from "bodily injury" or "property damage resulting from or contributed to, by any and all manufacture of, mining of, use of, sales of, installation of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

### EXCLUSION – PUNITIVE DAMAGES

It is agreed that this insurance does not apply to a claim of, or indemnification for, punitive or exemplary damages. If a suit shall have been brought against an Insured for claims falling within the coverage provided by this policy seeking both compensatory and punitive or exemplary damages then Underwriters will afford a defense to such action. Underwriters shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

## EXCLUSION – LEAD CONTAMINATION

It is agreed that this insurance excludes occurrences at the insured premises which result in:

(a)   "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

(b)   "Property Damage" arising from any form of lead;

(c)   any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

(d)   any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

## EXCLUSION – ABUSE AND MOLESTATION

It is agreed that the following exclusion is added to 2. Exclusions of Coverage A. Bodily Injury And Property Damage Liability (Section I – Coverages) and 2. Exclusions of Coverage B. Personal And Advertising Injury Liability (Section I – Coverages):

This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

1.　The actual threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured or

2.　The negligent:

　　a.　Employment;

　　b.　Investment;

　　c.　Supervision;

　　d.　Reporting to the proper authorities, or failure to so report; or

　　e.　Retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above.

## EXCLUSION – FINANCIAL ENDEAVOURS

It is agreed that this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1. operations over which you exercise control in a fiduciary capacity as trustee, guardian, executor, administrator, custodian, escrow agent or similar capacity;

2. damage to real or personal property of others in your safekeeping, care, custody or control;

3. the use or misuse by your Borrowers of funds loaned by you to such Borrowers;

4. the ownership, maintenance or use of any building in which you hold a security interest because of loans made in connection with the construction thereof;

5. any negligent act, error or omission in the performance of professional services for others by or on your behalf, including but not limited to:

   a.   administering estates or trusts or managing real or personal property of others;

   b.   acting as a mortgagee, mortgage servicing agent or fiduciary with regard to deeds of trust or mortgages;

   c.   the rendering of financial, economic or investment advice or advisory or management services;

   d.   compliance or failure to comply with notice to stop payment in connection with any check, note or draft, or refusal to pay or to certify or give notice of dishonor of such check note or draft;

   e.   electronic data processing;

   f.   acting as an escrow company or escrow agent;

   g.   acting as an insurance agent or broker;

   h.   acting as a real estate agent or broker;

failure to comply with Section 130, Civil Liberty, or Title I (Truth in Lending Act) of the Consumer Protection Act (Public Law 90-321; 82 stat. 146 et. seq) or any subsequent laws.

## EXCLUSION – EMPLOYMENT-RELATED PRACTICES

It is agreed that this insurance does not apply to loss, damage, cost or expense arising out of any:

(1)     Refusal to employ;

(2)     Termination of employment;

(3)     Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4)     Consequential injury as a result of (1) through (3) above.

This Exclusion applies whether the Insured may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**EXCLUSION – COMMUNICABLE DISEASE**

It is agreed that this insurance does not apply to bodily injury, sickness, mental or emotional distress, disability, arising out of the transmission of sickness or disease by an Assured through sexual contact.

## EXCLUSION – VOLUNTARY LABOR

It is agreed that this insurance does not apply to bodily injury to any member, associate (affiliated) member, or to any person or persons loaned to volunteering services to the Assured, whether or not paid by the Assured, arising out of or in the course of work performed.

**EXCLUSION – INDEPENDENT CONTRACTOR**

It is agreed that this insurance does not apply to "bodily injury", "personal injury", "advertising injury" or medical payments to:

1.  Any employee, temporary or leased worker of independent contractors arising out of operations performed for you by said independent contractors or your acts or omissions in connection with the general supervision of such operations; or

2.  The spouse, child, parent, brother or sister of that employee, temporary worker or "leased worker" as a consequence of 1. above.

## EXCLUSION – ASSAULT AND BATTERY

It is agreed that this insurance does not apply to:

Assault and/or Battery committed or alleged to have been committed by any person whosoever regardless of degree of culpability or intent; or

A.   Any actual or alleged act or omission in the employment, investigation, supervision reporting or failing to report to the proper authorities or retention of a person for whom any insured is or was legally responsible which results in an assault and/or battery; or

B.   Any actual or alleged act or omission in the prevention or suppression of an assault and/or battery.

## EXCLUSION – FIDUCIARY LIABILITY

It is agreed that Underwriters shall not have an obligation to pay for any costs, interest or damages attributable to "bodily injury" or "property damage" arising out of the ownership, maintenance or use, including all related operations, of property in which you are acting in a fiduciary or representative capacity.

However, this exclusion does not apply to any person or organization which acts as a mortgage servicing agent through written agreement, or for which the Assured may have an insurable interest, ownership interest or controlling interest through repossession, filing of repossession, foreclosure, receipt of deed in lieu of foreclosure or for property in which the Assured becomes "mortgagee in possession" which the Assured has requested coverage by providing Underwriters required reports of values.

## EXCLUSION – PROFESSIONAL LIABILITY

It is agreed that this insurance does not apply to liability arising out of the provision of or failure to provide Professional Services.

## EXCLUSION – PRODUCTS – COMPLETED OPERATIONS HAZARD

This insurance does not apply to "bodily injury" or "property damage" included within the products -- completed operations hazard.

## EXCLUSION – CERTAIN PROPERTIES

In consideration of the premium charged it is understood and agreed that this liability policy excludes the following items:

1. Any ongoing manufacturing operations.
2. Any operating Hotels / Motels.
3. Farms over 2,000 acres.

All other terms and conditions remain unchanged.

## EXCLUSION – TENANTS

This insurance does not apply to liability or suits arising from Tenants or the acts of Tenants.

COMMERCIAL GENERAL LIABILITY

CG 21 38 11 85

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

COVERAGE B (Section I) does not apply and none of the references to it In the Coverage Part apply.

COMMERCIAL GENERAL LIABILITY CG 25 04 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Location(s):** Locations as reported on our Monthly Reporting Schedule |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

  1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

  3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

  4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

  1. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

  2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

D. For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

E. The provisions of Section III – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

## Habitability Violation Exclusion

Entry is optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

**ATTACHED TO AND FORMING PART OF POLICY NO:**

**EFFECTIVE DATE OF ENDORSEMENT:**

**ISSUED TO:**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to SECTION 1-COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, subsection 2. Exclusions; and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, subsection 2. Exclusions:

This insurance does not apply to damages or expenses due to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from the alleged or actual violations(s) of the following, as they pertain to "habitability", including amendments thereto:

(a) Civil Codes;

(b) Health and Safety Codes;

(c) Any Housing and Urban Development laws, ordinances or statutes;

(d) Rent stabilization laws and ordinances;

(e) Federal, State or local section 8 (government subsidized) or programs;

(f) Any administrative rules or regulations pertaining to any of the foregoing, including but not limited to those promulgated by local municipalities; or

(g) Actual or constructive wrongful eviction arising from (a) through (f) above.

We shall not have any duty to defend any claim, proceeding or "suit" in any way based on, attributed to, arising out of, resulting from or any manner related to that which is described above, including but limited to, the diminished value of property or mental, physical or emotional injuries alleged.

For purposes of this endorsement, the following definition is applicable:

"Habitability" means safe living environment and/or fit for occupancy by human beings in a sanitary, healthy, habitable and tenantable condition.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above-mentioned Certificate, other than as above stated

ACA- GL-USA-030

## Animal / Reptile / Insect Endorsement

This endorsement modifies the Policy and the insurance provided under the following:

The coverage under this Policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of or caused by any animal, birds, reptiles or insects regardless of whether owned by you, in your care, or on your premises. Provided, however, that this Policy provides a sublimit of

$50,000 per occurrence and in the aggregate for bodily injury caused directly by a dog bite on your premises,   whether or not the dog is owned by you or in your care.

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion 2.p. of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Access Or Disclosure Of Confidential Or Personal Information

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 07 05 14                    © Insurance Services Office, Inc., 2013                    Page 1 of 1

## SEVERAL LIABILITY CLAUSE

**PLEASE NOTE – This notice contains important information.  PLEASE READ CAREFULLY**

The liability of an insurer under this contract is several and not joint with other insurers party to this contract.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA5096 (Combined Certificate) (07/03/08)                                                                              Page 1 of 1

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Insured: Affinity Insurance Program Marketing LLC

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

|   | I hereby elect to purchase coverage for acts of terrorism for a prospective premium of USD0.012% Residential; 0.032% Commercial |
|---|---|
| ✓ | I hereby elect to have coverage for acts of terrorism excluded from my policy. I understand that I will have no coverage for losses arising from acts of terrorism. |

_Juli Vaupell_
Policyholder/Applicant's Signature

_Juli Vaupell_
Print Name

_12/7/14_
Date

_____
Syndicate on behalf of certain underwriters at Lloyd's

_____ Liability - TBD _____
Policy Number

LMA9104
12 January 2015

## SECURITY

Effective with:

| | | | |
|---|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | ACA 2014 | Percentage: | 50% |
| HAMILTON SPECIALTY INSURANCE COMPANY | | Percentage: | 50% |
| | | **TOTAL PERCENTAGE:** | **100%** |



One Lime Street London EC3M 7HA

# EXHIBIT 4

**STATEMENT FORM**
☒ INTERVIEW ☐ INTERROGATION

police Page 1 of 2

**Contact Location (Check One):**
☐ Walk-in to Police Facility ☑ In Field/At Scene ☐ Hospital ☐ Conveyed by a DPD Member (Complete Witness Conveyance Form)
Location/Place: Hospital

| Print Information: | | FILE/CASE NO |
|---|---|---|
| STATEMENT TAKEN BY: RANK, FIRST / LAST NAME, BADGE Det. Robert Holmes D-4693 | | PRECINCT/COMMAND ARSON |
| DATE STATEMENT TAKEN: 6-27-17 | START TIME 6:18 Am | END TIME 6:50 Am |

NAME OF PERSON PROVIDING STATEMENT: Charles Sturkey
DOB: AGE 46 SEX m RACE B HGT. 6'8 WGT. 350
SOC. SEC. NO. (LAST 4 DIGITS): XX-XX-
RESIDENCE: 18,912 Lahser
EMPLOYER: DEPARTMENT:
RESIDING WITH: CHILDREN / SCHOOL:
RELATIVES / FRIENDS: ADDRESS: PHONE:
REVIEWING SUPERVISOR RANK, FULL NAME, BADGE (PRINT): SIGNATURE OF REVIEWING SUPERVISOR:
DATE 6/27/17 TIME PRECINCT/COMMAND

Q. What HAPPEN with the House Fire?

A. We were sleep And I smelled Smoke, So I came down Stairs And seen Fire Behind the Stove It was so Bad, I Started Yelling Fire - Fire Everybody came out Their Rooms And The Basement And we Ran out. But Me And Marian Tried To go Back In But It was To Bad And we couldn't get Back In.

Q. Was There Anything with the Stove?

A. I've Talked to The landlord About the Stove over And over Again. We've Had A couple of Fires From That Stove, we Had Fires In the Oven, I told the land lord And She said Just Clean It So we would Clean It And Clean It. It would Have Fires with the Stove And Nobody would Even touch It. We've Been Having

SIGNATURE OF PERSON PROVIDING STATEMENT: Charles Sturkey DATE AND TIME 6-27-17 6:50am

C of D-72-ST (4-76)                                    DPO-103 (Rev 04/2014)

PRINT NAME Charles Sturkey     (CONTINUED)     Page 2 of 2

Problems with, Since we've moved there. I've Asked
Her to Replace the Stove.

Q. What's your landlord's NAme?

A. Lisa Smith

Q. WAs there Any WORKIng FiRe AlARMS In Your House?

A. Yes That'Re In the House, But I Did n't HeAR ANY
of them go off.

Q. Do Remember what time the Fire Occurred?

A. I WANNA SAY 1:30 - 2:00

X Charles Sturkey   6-27-17 6:50am

SIGNATURE OF PERSON PROVIDING STATEMENT / DATE AND TIME

C of D-72-ST (4-78)     DPD-103 (Rev 04-2014)